**Reversed and Rendered and Majority and Concurring Opinions filed April 30, 2014.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

---

### NO. 14-13-00045-CV

---

**BETTY GETERS, Appellant**

**V.**

**BAYTOWN HOUSING AUTHORITY, Appellee**

---

**On Appeal from the County Civil Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 1017979**

---

## M A J O R I T Y   O P I N I O N

Betty Geters appeals from a judgment favoring Baytown Housing Authority (BHA) in its forcible detainer action against her. In its judgment, the trial court awarded BHA possession of an apartment Geters had leased. In her sole issue, Geters contends that the trial court erred because the record does not contain evidence that BHA provided her with a notice to vacate that complied with Texas Property Code section 24.005. Among other responses, BHA contends that

Geters' appeal is moot because her lease has expired and thus she does not have a potentially meritorious claim to possession of the property. Finding we indeed have jurisdiction, we reverse the trial court's judgment and render judgment favoring Geters.

### *Background*

BHA operates Dezavala Courts,[1] a federally-subsidized, multi-family housing project where Geters lived for approximately 41 years. Effective January 1, 2012, Geters and BHA executed their most recent lease agreement, a one-year written lease. The lease agreement included provisions requiring management approval before anyone else would be allowed to live in the apartment and specifically mandating that no one besides Geters herself could stay in the apartment for more than 14 consecutive days without management's written consent. Among its obligations, BHA agreed "[t]o comply with requirements of applicable" regulations of the United States Department of Housing and Urban Development (HUD). The lease further provided that BHA could "terminate or refuse to renew this Lease for serious or repeated violation of Resident's obligation under any section of this Lease or for other good cause." Prior to termination, however, BHA was required to provide a notice of termination that "shall inform resident of his/her right to make such reply as he/she may wish and his/her right to request a hearing in accordance with the current Grievance Procedure as posted in the Management Office."[2] The notice must be provided thirty days before the termination date if for a reason other than failure to pay rent timely or a health, safety, or security concern.

---

[1] "Dezavala" is the spelling and capitalization that appears in our record.

[2] The lease stated that notice to vacate may be combined with and run concurrently with notice of lease termination.

According to their testimony at trial, Cora Ringer, property manager for Dezavala Courts, and Anna Laurel, BHA director of public housing, questioned Geters in early June 2012 about reports that Geters' son was staying in her apartment. The BHA representatives obtained from Geters what they perceived to be a confession that she had allowed her son to stay in the apartment for more than fourteen straight days, a violation of the lease agreement.[3]

On June 11, 2012, Geters received a combined notice of termination of her lease and notice to vacate the premises. The stated reason for termination was Unauthorized Occupant,[4] and its cover letter, signed by Ringer, alleged Geters had "admitted that [her] son stays with [her] over the 14 day limit as stated on [the] lease." The document purported to terminate her right of occupancy and directed her to vacate by July 11, 2012 or "[BHA] shall proceed against [her] as the Law directs." It further informed Geters that she had a right to request a hearing under the BHA grievance procedures within ten days of the date of the notice.[5]

No other notices were given to Geters. Geters did not request a grievance hearing. BHA filed a forcible detainer action on June 28, 2012 in a Harris County justice of the peace court. The justice court found in Geters' favor on July 10, 2012. BHA then filed a de novo appeal in county court at law. At the conclusion of BHA's presentation of its case, Geters moved for judgment on the grounds that (1) BHA had not provided her with a second notice to vacate after her time to respond had expired, and (2) the lawsuit was filed prior to expiration of the thirty days given to vacate. The county court denied Geters' motion for judgment. At the conclusion of trial, the court awarded possession of the property to BHA. In its

---

[3] Geters testified that her son had not stayed in her apartment beyond 14 days.

[4] The alleged violations in full are: "You have violated lease paragraph(s): 1-A; 7-A; 7-B; Unauthorized Occupant." The cited paragraphs concern the identity of premises residents.

[5] The notice did not expressly mention Geters' right to reply.

findings of fact and conclusions of law, the court stated that Geters violated the lease agreement by permitting her son to reside with her without obtaining permission from BHA. The court made no express finding regarding the sufficiency of the notice to vacate. In its judgment, the court ordered that a writ of possession would issue after November 2, 2012. Geters vacated the property on December 8, 2012.

## *Jurisdiction*

As stated, BHA contends that this appeal has been rendered moot by the fact that Geters does not have a potentially meritorious claim to current, actual possession of the property because her lease expired by its own terms on December 31, 2012 and did not provide for automatic renewal. *See Marshall v. Hous. Auth. of San Antonio,* 198 S.W.3d 782, 787 (Tex. 2006) (holding appeal in forcible detainer action was moot because lease had expired and tenant presented no basis for claiming a right to possession after the expiration date). The only issue in a forcible detainer action is the right to possession of the premises. *Id*. at 785-86. Thus, if the tenant no longer has an arguable right to possession, even once the case is on appeal, a justiciable controversy ceases to exist, and the case is rendered moot. *See id*. at 785-87; *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) ("A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings, including the appeal."). We lack jurisdiction to entertain moot controversies. *See NCAA v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999).

Geters asserts, however, that she maintains an arguable basis for asserting a right to possession because—even though the lease does not expressly state that it was to automatically renew—it was in fact required to automatically renew under its own terms and under federal law. *See Washington v. Related Arbor Court,*

4

*LLC,* 357 S.W.3d 676, 678 n.1 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding appeal in forcible detainer action was not moot where lease automatically renewed); *Kennedy v. Andover Place Apts.,* 203 S.W.3d 495, 497 (Tex. App.— Houston [14th Dist.] 2006, no pet.) (same).

As a federally-subsidized housing authority, BHA is governed by the United States Housing Act of 1937 and its attendant regulations. *See, e.g., Sager v. Housing Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 531-32 (D. Md. 2012) ("The operation of public housing by [public housing authorities] is subject to comprehensive federal regulation. Among other things, federal law dictates much of the content of public housing leases, requiring the inclusion of various provisions and prohibiting other provisions."); *Carrera v. Yepez*, 6 S.W.3d 654, 657 n.5 (Tex. App.—El Paso 1999, pet. dism'd w.o.j.) (discussing creation and governance of public housing authorities). The applicable federal statute and regulations mandate that public housing authority leases contain provisions for automatic renewal. 42 U.S.C. § 1437d(*l*)(1) (requiring that leases "shall be automatically renewed for all purposes"); 24 C.F.R. § 966.4(a)(2) (specifying that public housing leases "must be automatically renewed"); *see also Sager*, 855 F. Supp. 2d at 532 ("Leases in public housing are 'automatically renewed' on an annual basis, and cannot be terminated by a PHA except for 'serious or repeated violation of the terms or conditions of the lease or for other good cause.' The right of a public housing tenant to remain in his or her housing is 'entitled to due process protection.'" (quoting 42 U.S.C. § 1437d(*l*)(1), (5) and *Caulder v. Durham Hous. Auth.*, 433 F.2d 998, 1003 (4th Cir. 1970), and citing 24 C.F.R. § 966.4(a)(2), (*l*)(2) and *Goldberg v. Kelly*, 397 U.S. 254 (1970))).[6]

---

[6] The only basis for termination found by the trial court was the extended presence of Geters' son in the apartment without management's consent. Geters challenges the sufficiency of the evidence to establish she received proper notice regarding this ground, and we discuss that

As stated, the lease agreement at issue here does not specifically state whether or not it was to automatically renew. It does, however, expressly obligate BHA to comply with all applicable HUD regulations and provide that BHA could "refuse to renew this Lease for serious or repeated violation of Resident's obligation under any section of this Lease or for other good cause." The mere expiration of a lease term does not provide good cause for failure to renew a lease. *Cf. Kennedy*, 203 S.W.3d at 497; *Newhouse v. Settegast Heights Village Apts.*, 717 S.W.2d 131, 134 (Tex. App.—Houston [14th Dist.] 1986, no writ).[7]

Based on these statutory, regulatory, and contractual provisions concerning renewal, Geters indeed asserts an arguable basis for asserting a right to possession, even though the specified one-year period of her written lease has ended. *See Marshall*, 198 S.W.3d 785-87.[8] This dispute is therefore ongoing, and we retain jurisdiction to consider the appeal.[9]

---

issue in detail below.

[7] *Kennedy* and *Newhouse* both involved disputes in the context of federally subsidized housing but did not involve public housing authorities; thus, the applicable statutes and regulations are not the same as in the present case. *See Newhouse*, 717 S.W.2d at 132-33 (citing 42 U.S.C. 1437f(a) and 24 C.F.R. 247.2(a), 247.3(a)). However, termination of the lease by itself would not provide good cause for nonrenewal under either statutory or regulatory scheme. *See generally In re Burch*, 401 B.R. 153, 160 n.15 (Bankr. E. D. Pa. 2008) (discussing various public housing schemes and the requirement of good cause for nonrenewal).

[8] BHA also argues that Geters did not challenge on appeal the unauthorized occupancy of Geters' son, which it claims was "good cause" to terminate the lease even if it were automatically renewed. However, in *Kennedy,* this court found tenant's appeal was not moot (despite expiration of the lease) where the landlord failed to present evidence of good cause for termination arising *after* the forcible detainer was filed. 203 S.W.3d at 497.

[9] Although not raised by BHA, we further note that Geters' failure to supersede the judgment and resultant loss of possession of the property likewise does not moot her appeal because she retains a potentially meritorious claim of right to actual, current possession. *See Wilhelm v. Fed. Nat'l Mortg. Ass'n*, 349 S.W.3d 766, 768 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

### Notice

As mentioned above, in her sole issue, Geters contends that the trial court erred in awarding possession to BHA because the record contains no evidence that BHA provided her with a statutorily-sufficient notice to vacate. When reviewing the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support that finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the finding under review. *Id*. We must sustain a no-evidence point when either the record reveals a complete absence of evidence of a vital fact, the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence establishes conclusively the opposite of the vital fact. *Ahmed v. Ahmed*, 261 S.W.3d 190, 193-94 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Chapter 24 of the Texas Property Code governs forcible entry and detainer actions. Tex. Prop. Code §§ 24.001-.011; *see also Resendez v. FV REO I, LLC*, No. 03-13-00201-CV, 2014 WL 411720, at *1 n.1 (Tex. App.—Austin Jan. 31, 2014, no pet. h.) ("The statutory remedy of forcible detainer will lie when a person in possession of real property refuses to surrender possession on demand if the person is a tenant at will or by sufferance . . . ."). The proper interpretation of statutory language is a matter for de novo review. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). In determining the legislature's intent in enacting a statute, we look to the plain meaning of the words used in the statute. *See Fireman's Fund Cnty. Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 768–69 (Tex. 2000). We presume that every word was deliberately chosen and that excluded words

were intentionally excluded. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981).

Under Property Code section 24.002, a tenant commits a forcible detainer by refusing to surrender possession of real property after the landlord has lawfully terminated the tenant's right to possession. Tex. Prop. Code § 24.002(a); *Kennedy*, 203 S.W.3d at 497. That section requires a landlord to make a written demand for possession and comply with section 24.005's requirements regarding a notice to vacate before pursuing a forcible detainer action. Tex. Prop. Code § 24.002(b); *Kennedy*, 203 S.W.3d at 497. Because forcible detainer is a statutory cause of action, a landlord must strictly comply with its requirements. *Fashakin v. Fed. Home Loan. Mortg. Corp.*, No. 14-11-01079-CV, 2013 WL 1316694, at *2 (Tex. App.—Houston [14th Dist.] April 2, 2013, pet. denied) (mem. op.); *Kennedy*, 203 S.W.3d at 497. Proper notice is an element of a forcible detainer action. *Fashakin*, 2013 WL 1316694, at *2.

Geters specifically argues that BHA was not entitled to prevail in its forcible detainer action because it failed to comply with two notice-related requirements in section 24.005, specifically subsections (a) and (e), and thus did not lawfully terminate her tenancy. We agree.

### *Subsection 24.005(a)*

First, under subsection 24.005(a), a landlord must give a tenant "at least three days' written notice to vacate the premises before the landlord files a forcible detainer suit, unless the parties have contracted for a shorter or longer notice period in a written lease or agreement." Tex. Prop. Code § 24.005(a); *see also Caro v. Fed. Home Loan Mortg. Corp.*, No. 05-11-01023, 2013 WL 226890, at *2-3 (Tex. App.—Dallas Jan. 14, 2013, no pet.) (mem. op.) (holding record contained evidence supporting trial court's implied finding that forcible detainer action was

not filed until after expiration of time period specified in section 24.005(b), which is substantially similar to that of section 24.005(a)).

Here, the lease agreement between Geters and BHA required 30-days' notice of termination and provided that notice to vacate could run concurrently with notice of termination.[10] BHA's combined notice to terminate and notice to vacate delivered to Geters expressly allowed her 30 days to vacate the premises. Geters received those notices on June 11, 2012, and therefore had until July 11, 2012 to vacate under their terms. BHA, however, filed its forcible detainer action in justice court earlier, on June 28, 2012. This was a clear violation of section 24.005(a).

BHA argues, however, that the pertinent date for the filing of its lawsuit is August 1, 2012, the day that BHA filed its appeal of the justice court decision in county court. BHA cites *Stevenson v Housing Authority of the City of Austin* for the proposition that, when a justice court ruling is appealed to a county court, complaints regarding flawed proceedings in the justice court are rendered moot by the trial de novo in county court. 385 S.W. 3d 684, 687 (Tex. App.—El Paso, 2012, no pet.). *Stevenson* is not on point. *Stevenson* did not concern filing dates; it concerned an allegation of lack of due process. *Stevenson* relied on *Coleman v. Bank of America, National Assoc.*, No. 06–11–00105–CV, 2012 WL 1940674, at *1 (Tex. App.—Texarkana May 30, 2012, no pet.), for its holding that Stevenson's complaints were rendered moot by the de novo trial in county court. *Coleman* did not concern filing dates, either; it concerned the justice court's legal conclusion as to notice and held that an appeal from a justice court's judgment is, essentially, a new trial before a different judge. 2012 WL 1940674, at *1.

BHA neither initiated its lawsuit in county court, nor could it have. By

---

[10] See discussion regarding the propriety of the provision permitting the two notices to run concurrently, *supra*.

9

statute, forcible detainer actions must originate, as this one did, in justice court; such an action proceeds to county court only on appeal from the justice court's determination. *See* Tex. Prop. Code §24.004; *Haginas v. Malbis Mem'l Found.*, 163 Tex. 274, 277-78, 354 S.W.2d 368, 371 (Tex. 1962); *Williams v. Bayview-Realty Assocs.*, No. 14-12-00404-CV, 2014 WL 47730, at *1 (Tex. App.—Houston [14th Dist.] Jan. 7, 2014, no pet. h.). Thus, the date of filing in justice court, not the date of filing the appeal in county court, governs the analysis under section 24.005(a). *See Johnson v. Mohammed*, No. 03–10–00763–CV, 2013 WL 1955862, at *6-7 (Tex. App.—Austin May 10, 2013, pet. dism'd w.o.j.) (mem. op.) (using date of filing in justice court for determining whether notice was proper under section 24.005(b), which is substantially similar to section 24.005(a)); *Caro*, 2013 WL 226890, at *1-3 (same).

BHA additionally argues that reversal is not appropriate in this case because Geters failed to demonstrate that she was "injured or prejudiced" by the filing of the forcible detainer action prior to expiration of the time for her to vacate the premises. BHA represents that Geters had adequate time to retain counsel and prepare her case for trial.[11] BHA does not cite any authority for the proposition that a harm analysis should be applied in cases involving subsection 24.005(a), and this court never has held that a harm analysis should be performed. We decline to do so here. Subsection 24.005(a) more likely is intended to afford the tenant an opportunity to (1) persuade the landlord not to pursue eviction or (2) move out of the premises to avoid responding to a forcible detainer lawsuit rather than to hire counsel and prepare a defense. BHA failed to satisfy section 24.005(a) by filing its forcible detainer action before expiration of the time Geters was permitted to

---

[11] The forcible detainer action was filed on June 28, 2012, and trial occurred in justice court on July 10, 2012. BHA filed its appeal in county court on August 1, 2012, and trial occurred on October 9, 2012.

10

vacate the premises, thus denying her sufficient opportunity to persuade BHA not to pursue eviction or to move out before a lawsuit was filed against her.

### *Subsection 24.005(e)*

Second, subsection 24.005(e) states: "If the lease or applicable law requires the landlord to give a tenant an opportunity to respond to a notice of proposed eviction, a notice to vacate *may not be given* until the period provided for the tenant to respond to the eviction notice has expired." Tex. Prop. Code § 24.005(e) (emphasis added). "Under this plain language, when the lease requires an opportunity to respond to a proposed eviction and section 24.005 thus applies, the landlord must provide a separate, later notice to vacate." *Kennedy*, 203 S.W.3d at 498 (citing Tex. Prop. Code § 24.005(e) and *Santos v. City of Eagle Pass,* 727 S.W.2d 126, 129 (Tex. App.—San  Antonio 1987, no writ) (interpreting prior statute)).

Geters' lease states that she had a "right to make such reply as [she] may wish and . . . to request a hearing in accordance with the current Grievance Procedure . . . ." Although the lease does not specify how many days Geters would be afforded to respond to the proposed termination, the combined notice of termination and notice to vacate allotted her ten days from the date of the initial notice to request a hearing pursuant to the grievance procedure. Under subsection 24.005(e) and *Kennedy*, BHA should have provided Geters with a second notice to vacate after the expiration of the ten-day period. Tex. Prop. Code § 24.005(e); *Kennedy*, 203 S.W.3d at 498. BHA's failure to do so was fatal to its forcible detainer action. *See Fashakin*, 2013 WL 1316694, at *2 (explaining that proper notice is an element in a forcible detainer action); *Kennedy*, 203 S.W.3d at 498 (reversing county court's forcible detainer judgment awarding possession to landlord where landlord failed to provide second notice to vacate after expiration

11

of period provided for responding to notice of termination).

BHA further suggests in passing that Geters waived any complaint regarding violation of subsection 24.005(e) when she failed to respond to the notice of termination or utilize BHA's grievance procedure. BHA does not cite any authority in support of this one-sentence argument. Certainly, nothing in either subsection 24.005(e) itself or the *Kennedy* opinion indicates the requirement of a second or later notice is dependent on a tenant making a response or electing to utilize the grievance process. We decline to read such a condition into the statute where the statute contains no such language. *See Hidi*, 13 S.W.3d at 768-69 (stating that in determining legislative intent, we look to the plain meaning of the words used); *Cameron*, 618 S.W.2d at 540 (explaining that in interpreting a statute, we presume every word was deliberately chosen and excluded words were intentionally excluded).

### *Conclusion*

The trial court erred in its judgment awarding BHA possession of the premises because the record does not contain evidence that BHA provided Geters with a notice to vacate in compliance with Property Code section 24.005. We therefore sustain Geters' sole issue, reverse the trial court's judgment, and render judgment favoring Geters. *See Kennedy*, 203 S.W.3d at 498.


/s/    Martha Hill Jamison
       Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jamison (Frost, C.J., concurring).

12